**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.J., X.J., and J.J.-1**

**No. 18-0560** (Harrison County 17-JA-102-1, 17-JA-103-1, and 17-JA-104-1)

## MEMORANDUM DECISION

Petitioner Father J.J.-2, by counsel Allison S. McClure, appeals the Circuit Court of Harrison County's May 24, 2018, order terminating his parental rights to C.J., X.J., and J.J.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jenna L. Robey, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period and in terminating his parental rights when less-restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother after J.J.-1 tested positive for amphetamine and methamphetamine at birth. The DHHR alleged that petitioner was recently incarcerated upon a conviction of possession with intent to deliver heroin. The circuit court originally sentenced petitioner to the Anthony Center, but he was discharged for stealing, trading and selling property, creating a disturbance, and fighting. The DHHR further alleged that petitioner had a significant criminal history including convictions for domestic battery, disorderly conduct, shoplifting, destruction of property, petit larceny, and breaking and entering of an automobile. Based on these facts, the DHHR concluded that petitioner demonstrated a settled purpose to forego his parental duties and responsibilities.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.J.-1 and J.J.-2, respectively, throughout this memorandum decision.

In February of 2018, petitioner stipulated to the allegations of abuse and neglect contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent.

The circuit court held a dispositional hearing in March of 2018, wherein it heard evidence on petitioner's motion for a post-adjudicatory improvement period and the DHHR's motion to terminate parental rights. Petitioner testified that he remained incarcerated at the time of the hearing, but had been participating in services within the prison including substance abuse, parenting, and victim awareness classes, and had obtained a GED and an OSHA card. Further, he stated that he would comply with any terms and conditions of an improvement period, should one be granted. However, petitioner did not accept responsibility for his actions, stating that his parental rights should not be terminated because he "didn't really do nothing [sic] to get [the children] taken. . . . So I don't think my rights should be taken for – I don't think I should be punished for something that [the mother did]." Petitioner admitted that even prior to his incarceration in December of 2016, he did not primarily care for the children and left them in his parents' care. Further, his impending release on parole was contingent on his successful completion of a substance abuse program. Should he not complete the program, petitioner's anticipated release date was January 24, 2024.

Thereafter, a Child Protective Services ("CPS") worker testified and recommended termination of petitioner's parental rights to the children based upon his lack of a bond with the children and the need for permanency. The CPS worker testified that the children did not ask about petitioner and regarded the foster parents as their parents. The CPS worker did not believe that the classes petitioner completed while imprisoned were sufficient to address the DHHR's concerns or that there was a reasonable likelihood the situation could be resolved in a timely manner. After hearing evidence, the circuit court denied petitioner's request for an improvement period and terminated his parental rights to the children, finding that there was no evidence that petitioner had a bond with the children, he failed to take responsibility for his actions, and his release on parole was uncertain. As such, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. It is from the May 24, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[2]Both parents' parental rights were terminated below. The children were placed in a foster home with a permanency plan of adoption therein.

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period. Specifically, petitioner argues that he presented evidence demonstrating that he was participating in substance abuse treatment and other classes in prison and, thus, was likely to participate in an improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. While the record establishes that petitioner participated in services provided by the prison during his incarceration, the CPS worker testified that the classes had no bearing on this matter as they failed to demonstrate that petitioner could make appropriate decisions outside of prison. Petitioner remained incarcerated at the time of the dispositional hearing and was unable to meaningfully participate in an improvement period. Further, despite participating in services while incarcerated, petitioner failed to acknowledge the conditions of abuse, testified that he had not abused the children, and placed blame solely on the mother. We have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640). As such, even had petitioner been able to participate in an improvement period, his failure to acknowledge how his actions constituted abusive and neglectful behavior rendered an improvement period futile. Accordingly, we find that petitioner is entitled to no relief in this regard.

3

Petitioner next argues that the circuit court erred in terminating his parental rights when less-restrictive alternatives were available. According to petitioner, the basis for his incarceration, possession with intent to deliver, did not directly involve the children and he eventually completed a substance abuse program. Further, petitioner avers that he was released on parole two months after the dispositional hearing. As such, petitioner argues that the circuit court wrongfully found that there was no reasonable likelihood that he could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare. We find no merit in petitioner's argument.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future due to his inability to follow through with a family case plan. At the time of the dispositional hearing, petitioner remained incarcerated with an anticipated release date of January of 2024. While petitioner would potentially become eligible for parole, his release was contingent upon his successful completion of a drug abuse program and, as such, was uncertain. Petitioner himself acknowledges that this Court has held that

> "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Here, petitioner remained incarcerated and unable to follow through with an improvement period specifically designed to reduce or prevent the conditions of abuse and neglect. Further, due to his incarceration in December of 2016, petitioner had not seen his two oldest children for nearly two years. Petitioner's third child was born after his incarceration and he has not even met the child. As such, no bond existed and the children did not refer to or ask for petitioner. In fact, testimony established that the children had a strong bond with their foster parents and regarded them as their parents.

While petitioner argues that his potential release on parole provided him the opportunity to address the conditions of abuse and develop a bond with the children, the circuit court was not required to exhaust this speculative possibility of parental improvement, especially in light of the

children's tender ages. To the extent that petitioner argues he should have been granted a less-restrictive alternative to termination of his parental rights, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, the circuit court was within its discretion in declining to employ a less-restrictive alternative to termination of petitioner's parental rights and we find that he is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 24, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

5